# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

v.                        No. CR 07-2432 JP/KBM

MIGUEL HUMBERTO VALDEZ-GUTIERREZ
and EDGAR ORTIZ-SEGOVIA,

     Defendants.

## AMENDED
## MEMORANDUM OPINION AND ORDER

On November 15, 2007, at a preliminary hearing, United States Magistrate Judge Karen

B. Molzen orally ordered the United States to produce under FED. R. CRIM. P. 26.2 reports

written by Doña Ana County Sheriff's deputies who had arrested the Defendants.[1]  The United

States intended to have its case agent, a federal law enforcement officer who was not involved in

the arrests and who had no input into the preparation of the reports, testify based on the deputies'

reports.  The United States appealed[2] Judge Molzen's decision, arguing that these reports did not

fall within the ambit of "statement of the witness" as those words appear in FED. R. CRIM. P.

26.2.  The Court heard appellate arguments on November 16, 2007.  Based on the arguments

presented in the briefs and at the hearing on November 16, 2007, the Court concludes that, under

---

[1] Later, on December 7, 2007, Judge Molzen entered a Memorandum and Opinion (Doc. No. 25) explaining, in writing, her earlier ruling.

[2] The "appeal" was an emergency hearing before the District Court Judge ("the Court") on November 16, 2007 soon after the government filed United States Motion for Reconsideration of the Court's November 15, 2007 Ruling Requiring Disclosure of Certain "Statements" Under Federal Rule Criminal Procedure 26.2 and Jencks Act (Doc. No. 10). Later, on December 15, 2007, the government filed a Notice of Appeal (Doc. No. 30) of Judge Molzen's ruling in her Memorandum and Opinion (Doc. No. 25) filed December 7, 2007.

facts like those in this case, a judge cannot require reports prepared by a non-testifying author to be produced under Rule 26.2 to defense counsel at a preliminary hearing.  However, the Court stresses the importance of voluntary production by the government of relevant, non-privileged material in appropriate cases.

## I.      Background

On November 7, 2007, the United States filed a Criminal Complaint (Doc. No. 1) against Defendants Miguel Humberto Valdez-Gutierrez and Edgar Ortiz-Segovia, alleging that they possessed and conspired to distribute approximately 134 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846.  After moving to continue the preliminary hearing on November 15, 2007, the Defendants asked that the government produce reports that were expected to form the basis of the direct testimony of the government's sole witness, Drug Enforcement Agency Agent Alberto Mendoza.  Defendants made this request under FED. R. CRIM. P. 26.2.  The requested reports were written by the arresting police officers, Doña Ana County Sheriff's Deputies John Duffy and Gerard Madden. Agent Mendoza was not involved in the arrest of the Defendants and he played no role in the preparation of the reports. Agent Mendoza had only adscititious knowledge of the government's grounds for probable cause to charge the Defendants with committing crimes; he derived this knowledge from reading the arresting deputy sheriffs' reports and later discussing their reports with them.

Judge Molzen ordered that the government would have to produce the deputies' reports after Agent Mendoza testified on direct examination. The United States argued that Rule 26.2 did not require the production of these reports and asked Judge Molzen to refer the question to a district judge. The following day, November 16, 2007, the United States filed a Motion for

Reconsideration of the Court's November 15, 2007 Ruling Requiring Disclosure of Certain "Statements" under Federal Rule Criminal Procedure 26.2 and Jencks Act (Doc. No. 10).

On November 16, 2007, this Court held a hearing on the appeal of Judge Molzen's ruling and on the government's motion for reconsideration. Counsel for the parties advised the Court that the issue, whether the government must produce reports prepared by non-testifying law enforcement officers upon which a testifying witness who did not participate in preparation of the reports relies, has recently arisen several times at preliminary hearings before magistrate judges in Las Cruces, New Mexico. Counsel asked that a district judge render an opinion on the question. The Court stated it would issue an opinion during December, 2007 to guide the United States magistrate judges with respect to future preliminary hearings. Counsel for the United States then agreed to produce the deputies' reports to counsel for the Defendants in order to avoid delaying further the preliminary hearing.

On November 19, 2007, Defendants filed Defendant's Memorandum of Law Regarding Production of Reports Under F.R.Cr.P. 26.2 and Jencks Act (Doc. No. 13), in opposition to the government's motion for reconsideration. On December 14, 2007, the government filed United States' Reply to Defendant's Response to the United States' Appeal of the Magistrate Court's Ruling Regarding Production of Reports Under Federal Rule Criminal Procedure 26.2 and Jencks Act (Doc. No. 29). The Court has taken into account the motion for reconsideration, the memorandum in opposition, the government's reply, Judge Molzen's Memorandum and Opinion, the government's notice of appeal, and relevant legal authority.

II.     **Analysis**

Rule 26.2 of the Federal Rules of Criminal Procedure establishes a procedure by which a party may ask a judge to compel the opposing party to produce "any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony."[3] The dispute in this case is about whether "any statement of the witness" includes a written report or statement that the witness did not personally make, but on which the witness will rely in providing testimony.

The United States Court of Appeals for the Tenth Circuit apparently has not addressed whether statements or reports of this nature must be produced at a preliminary hearing under Rule 26.2 or its predecessor, the Jencks Act, 18 U.S.C. § 3500. Therefore, the Court will look to the text of both Rule 26.2 and the Jencks Act, the developmental history of Rule 26.2, the legislative history of the Jencks Act, and decisions from other circuit courts of appeal to resolve the dispute. The Court concludes that neither Rule 26.2 nor the Jencks Act requires the government to produce at a preliminary hearing statements or reports on which a testifying witness relies where the witness was not involved in the investigation or arrest of the defendant and had no part in preparing the statements or reports.

A.     **Text and Legislative History**

Rule 26.2(f) defines three types of statements that must be produced. Pertinent to this case is the first type: "a written statement that the witness makes and signs, or otherwise adopts

_____

[3] The full text of 26.2(a) is as follows:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

or approves." FED. R. CRIM. P. 26.2(f)(1). This provision may be read two ways – conjunctively or disjunctively. The conjunctive reading requires both (1) that the witness make the statement, **and** (2) that the witness sign or in some other manner adopt or approve the statement that the witness made. The disjunctive, more permissive interpretation is that the Defendant must either (1) make and sign the statement **or** (2) in some other manner adopt or approve the statement that the witness, personally, or someone else has made. Defendants urge the Court to adopt the more permissive reading, arguing that a testifying witness can adopt or approve a statement that was made by someone else simply by testifying under oath based on the other person's statement. While the text of Rule 26.2(f)(1) arguably permits the disputed language to be read in the manner Defendants advocate, the context and history of Rule 26.2 and the Jencks Act reveal that an interpretation which requires the witness to have actually made the statement is the correct way to read the disputed language.

Rule 26.2 was adopted in 1978 based on the 1957 Jencks Act. Pub. L. No. 85-269, 71 Stat. 595 (codified at 18 U.S.C. § 3500). The Committee on Rules of Practice and Procedure ("Rules Committee") intended to transfer the Jencks Act requirements into the Federal Rules of Criminal Procedure while making only limited and specific substantive changes.[4] Therefore, the text of the Jencks Act, which differs only slightly from the wording in Rule 26.2, provides an important basis to use in interpreting Rule 26.2. The wording of the parallel provision of the

---

[4] The only substantive change intended by the Rules Committee was to incorporate the holding of *United States v. Nobles*, 422 U.S. 225 (1975) into Rule 26.2 so as to make statements of defense witnesses available on the same terms as those of prosecution witnesses. *See* Advisory Committee Note to FED. R. CRIM. P. 26.2. The adoption of Rule 26.2 reflected "the notion that provisions which are purely procedural in nature should appear in the Federal Rules of Criminal Procedure rather than in Title 18." *Id.*

Jencks Act is: "a written statement made by said witness and signed or otherwise adopted or approved by him." 18 U.S.C. § 3500(e)(1). The absence of a comma following "signed" in the Jencks Act version clearly indicates that "adopted or approved" is an alternative only to "signed," rather than to both "made and signed." This suggests that a narrower reading of the phrase "adopted or approved" as those words appear in Rule 26.2 is appropriate.

The two other subsections of Rule 26.2(f) that define types of producible statements refer unambiguously to statements actually made by the witness. Rule 26.2(f)(2) describes a "recorded recital of the witness's oral statement" contained in a recording or a transcript. Rule 26.2(f)(3) refers to a "witness's statement to a grand jury." Although the wording of Rule 26.2(f)(1) does not as clearly indicate that the witness must have made the statement, the fact that subsections (2) and (3) of rule 26.2(f) definitely state that the statement had been the witness's own strongly suggests that Rule 26.2(f)(1) should be read in a similar manner to require that the witness referred to in subsection (1) actually had made the statement.

The language of the parallel subsections of the Jencks Act dictates the same conclusion. Each of those subsections uses the phrase "statement made by said witness." 18 U.S.C. § 3500(e)(1), (2) & (3). This statutory wording suggests, even more strongly, that any ambiguity created by the punctuation and syntax in Rule 26.2(f)(1) should be resolved by reading Rule 26.2(f)(1) to apply to a statement actually made by the testifying witness.

The legislative history of the Jencks Act also reveals that Congress intended a narrower meaning of "adopted or approved." The Senate Report related to the Jencks Act expressed concern about a trend by lower federal courts, that developed after the Supreme Court's decision in *Jencks v. United States*, 353 U.S. 657 (1957), to require the government to produce its entire

investigative file.[5] S. Rep. No. 85-981 (1957), *as reprinted in* 1957 U.S.C.C.A.N. 1861. The Senate Report states that Senate Bill 2377, which became the Jencks Act, permits production only of "written statements previously made by a Government witness . . . which are signed by him or otherwise adopted or approved by him." *Id.* at 1862. This phrasing makes it apparent that Congress intended the Jencks Act to apply only to statements actually made by the witness.[6]

By passing the Jencks Act, Congress sought to curtail overly permissive lower court applications of *Jencks* by creating "detailed procedural safeguards" for the "production of the carefully restricted and most trustworthy class of statements." *Palermo v. United States*, 360 U.S. 343, 349 (1959). *Palermo* held that the implied lesson of Congress's restrictive legislation was that the Jencks Act would be "the exclusive, limiting means of compelling for cross-examination purposes the production of statements of a government witness to an agent of the Government." *Id.* Therefore, ambiguities in the language of the Jencks Act should be resolved in favor of less rather than greater disclosure. *Id.* at 349–50. By implication, the same restrictive reading should apply to the language of Rule 26.2 which was intended simply to incorporate into the Federal Rules of Criminal Procedure the principles of the Jencks Act.

---

[5]An appendix to Senate Report 85-981 describes "cases illustrating misinterpretations" of the *Jencks* decision. In what the Senate Report labels the "Wagering Tax Act case tried in Atlanta," the government called as its witness a supervisor who testified based in part on his personal knowledge, and in part on what he had read in the report of investigation produced by other agents. The defense moved for the production of the entire investigative report, which the court granted. 1957 U.S.C.C.A.N. at 1865. The Senate's objection to this case reveals that the Senate opposed a broader view of what constitutes a "statement of the witness."

[6]The Conference Committee adopted the Senate version of the legislation instead of the House version; hence the Senate Report can be considered as evidence of congressional intent as to the meaning of the statute, as passed.

**B.**     **Judicial Decisions**

The decisions of circuit courts of appeal which have interpreted Rule 26.2 and the Jencks

Act likewise support a narrow reading of their language. In *United States v. Bettencourt*, 614

F.2d 214 (9th Cir. 1980), a government witness testified regarding the defendant's earlier

misconduct. The witness's testimony was based entirely on the report of another officer. *Id*. at

215. The Court concluded that the Jencks Act did not cover the report because it "was not 'made

by' the witness." *Id.* at 216. In *United States v. Blas*, 947 F.2d 1320 (7th Cir. 1991), a DEA agent

testified at the defendant's sentencing hearing based on the investigative reports of other officers.

The Seventh Circuit held that these reports were not *Jencks* "statements" because they did not

"reflect fully and without distortion the witness's own words." *Id.* at 1327 (*quoting United States

v. Allen*, 798 F.2d 985, 994 (7th Cir. 1986)).

Neither *Bettencourt* nor *Blas* addressed the precise argument that Defendants make

here—that Agent Mendoza should be deemed to have adopted and approved the reports prepared

by Deputies Madden and Duffy because Agent Mendoza was expected to testify under oath

based on the contents of the deputies' reports. (Def.'s Memorandum of Law Regarding

Production of Reports at 1–2). The cases that have focused on the phrase "otherwise adopts or

approves" found in Rule 26.2 had factual backgrounds different from the underlying facts in this

case; those cases were concerned with requests to produce notes made by a government agent

during an interview of the testifying witness that preceded the hearing at which the witness

testified. Because the testifying witness did not personally make the written "statement," i.e., the

notes written down by the agent who had interviewed the witness, the courts have been

concerned with ensuring that the testifying witness had adequate opportunity to review the

requested "statement"—the notes of the interview—and vouch for the accuracy of the notes.[7] This judicial concern about assuring the accuracy of the written account of a witness's statement, prepared by someone other than the witness, seems to be incompatible with the notion that a witness could adopt a statement prepared by somebody else simply by basing testimony on the statement without having any personal knowledge of the truth of that statement.

The only situations in which circuit courts of appeal have held that a testifying witness adopted a statement or report prepared by someone else is where the testifying witness either had some part in making the statement or report or the testifying witness participated in conducting the underlying investigation and later approved the accuracy of the contents of the statement or report of the investigation. *United States v. McCarthy*, 301 F.2d 796 (3rd Cir. 1962); *United States v. Sink*, 586 F.2d 1041 (5th Cir. 1978).

In *United States v. McCarthy*, 301 F.2d 796 (3rd Cir. 1962), the testifying agent, Smith, had interviewed the defendant along with another agent, Carrig. Both agents took notes during the interview, and Carrig later converted the notes into a formal report. *Id*. at 797. The agents then discussed the report and Smith checked it for accuracy. *Id.* The court concluded that "the report . . . is substantially a written report by the witness Smith of the interview . . . which had been 'signed or otherwise adopted and approved by him,'" *id.* at 799. The Court did not explain how it made this determination because the Court focused less on who wrote the report and more on whether the report could be considered a Jencks Act "statement" since it was not made

---

[7] *See, e.g.*, *Smith v. United States*, 31 F.3d 1294, 1301 (4th Cir. 1994) ("[n]otes taken by prosecutors and other government agents during a pretrial interview of a witness may qualify as a 'statement' . . . if the witness has reviewed them in their entirety . . . and formally and unambiguously approved them . . . as an accurate record of what he said during the interview"); *United States v. Newman*, 849 F.2d 156 (5th Cir. 1988) (same).

contemporaneously with the interview of the witness and was not a verbatim account of that interview. *Id.* at 798–99.

A magistrate judge has characterized the holding in *McCarthy* as recognizing a "joint investigation doctrine" under which a report would be produced as a "statement" under Rule 26.2 "if the testifying witness participated in the investigative activity specified in the report and concurs in the report's accuracy." *United States v. Begaye*, 236 F.R.D. 448, 452 (D. Ariz. 2006).

An opinion by the United States Court of Appeals for the Fifth Circuit in *United States v. Sink*, 586 F.2d 1041 (5th Cir. 1978), presents another example of the joint investigation doctrine, although the Court did not describe it in that fashion in the opinion. In *United States v. Sink*, two officers, Stebbins and Connelly, investigated a counterfeiting conspiracy. Connelly arrested the defendant; Stebbins wrote a report in connection with the investigation. *Id.* at 1050. Both Stebbins and Connelly testified at the trial. The Fifth Circuit Court of Appeals held that Agent Stebbins's report constituted a Jencks Act statement as to Agent Connelly because, in addition to participating in the investigation, Agent Connelly had "endorsed" the report and "verified its accuracy." *Id.*

The opinion by the Court of Appeals for the Third Circuit in *Government of the Virgin Islands v. Lovell*, 401 F.2d 307, 309–10 (3rd Cir. 1969) describes a scenario that contrasts with the factual situations supporting the application of the "joint investigation doctrine." In *Government of the Virgin Islands v. Lovell*, Detective Torres interviewed the defendant and prepared a report of the interview. Detective Groneveldt, the supervisor of Detective Torres, had not participated in the interview of the defendant, but signed off on Detective Torres's report as "approved." Detective Groneveldt testified at trial based, in part, on Detective Torres's report.

10

The defendant then requested production of Detective Torres's report to use in cross-examining Detective Groneveldt. The Court of Appeals for the Third Circuit held that Detective Groneveldt's signature and notation of "approved" on Detective Torres's report did not equate with the Jencks Act language "signed or otherwise adopted or approved" and consequently affirmed the district court's ruling that the Jencks Act did not require production of Detective Torres's report. In the present case, Agent Mendoza's connection with the detectives' reports was much more attenuated than was Detective Groneveldt's involvement with Detective Torres's report in *Government of the Virgin Islands v. Lovell*; Agent Mendoza did not supervise the deputy sheriffs, did not sign their reports, and did not note an approval of the reports.

The Defendants' argument that Agent Mendoza can be deemed to have adopted the deputy sheriffs' reports finds some support in the holding of the United States Court of Appeals for the Second Circuit in *United States v. Gotchis*, 803 F.2d 74, 78 (2nd Cir. 1986). In that case, the Second Circuit held that the terms "signed or . . . adopted or approved" require a demonstration of the testifying witness's "intent to be held accountable for the contents." *Id*. at 78. In *Gotchis*, the testifying witness was the officer who had arrested the defendant. Prior to the arrest, he had made some notes based on another officer's description of the suspect. The court determined that these notes were not producible as a Jencks Act "statement" because the arresting officer, who was also the testifying witness, had simply written down the suspect's description but did not vouch for its accuracy. *Id*. at 77. The fact that the arresting officer "later acted on the information . . . nursing the belief or hope, no doubt, that the information was accurate" did not constitute an adoption of the description. *Id.* at 77. Similarly, in this case, Agent Mendoza appears to merely believe and hope that the deputies' reports are true, but he

11

cannot vouch for their accuracy based on any personal knowledge. Hence, the deputies' reports would be of little use to the Defendants in an effort to impeach Agent Mendoza's credibility.

It should be noted that the United States Supreme Court identified impeachment as the primary use of Jencks Act statements in *Palermo v. United States*.[8] 360 U.S. at 349 ("general statutory aim [is] to restrict the use of such statements to impeachment"); *United States v. Smaldone*, 544 F.2d 456, 462 (10th Cir. 1976) (production under the Jencks Act is for the "exclusive purposes of impeachment"). In *United States v. Howard*, 450 F.2d 792 (9th Cir. 1971), the Ninth Circuit emphasized that since only a witness's <u>own</u> statement would enable cross-examination on credibility, only a statement of that type is covered by the Jencks Act. *Id.*; *see also United States v. Head*, 586 F.2d 508, 512 (5th Cir. 1978) (Jencks Act "requir[es] the prosecution to furnish the statements of any witness it calls . . . so that the defense is assured that the witness has made no secret contrary statements in the past").

In addition, each Defendant argues that the government's use of hearsay witnesses and refusal to disclose third-party statements "effectively thwarts" his right to cross-examine the government's witnesses against him. (Def.'s Memorandum of Law at 2–3.) In *Campbell v. United States*, 373 U.S. 487 (1963), the Supreme Court emphasized how Jencks Act material enables effective impeachment and makes trial more fair for defendants. However, the argument regarding deprivation of the right to cross-examine fails because a defendant has no Sixth Amendment right to confrontation at a preliminary hearing. *See Gerstein v. Pugh*, 420 U.S. 103, 120 (1975) ("adversary safeguards are not essential for the probable cause determination");

---

[8] In the Jencks Act, Congress limited the types of government records to which defendants should have access in the interest of national security and to prevent "fishing expeditions." *See United States v. Carter*, 613 F.2d 256, 261 (10th Cir. 1979).

*United States v. Andrus*, 775 F.2d 825, 836 (7th Cir. 1985); *Barber v. Page*, 390 U.S. 719, 725

(1968) (holding that "confrontation is basically a trial right" and that preliminary hearings serve

a different function).

## C.     Case Management Issues

While a defendant lacks a right to cross-examine at a preliminary hearing, the court does

have a strong interest in enabling effective cross-examination that increases the accuracy of

probable cause determinations.[9] Because probable cause determinations are incredibly fact-

sensitive, the parties' ability to highlight factual omissions or facts taken out of context by

opposing witnesses helps the court reach an accurate determination. In *Gerstein v. Pugh*, 420

U.S. at 121–22, the Supreme Court noted that confrontation and cross-examination might

"enhance the reliability of probable cause determinations in some cases," but concluded that the

burden of requiring these procedures in preliminary hearings would outweigh the benefits.

Likewise, this Court is concerned about case management issues confronting United

States magistrate judges who are requested to order production of third-party statements at

preliminary hearings. At the November 16, 2007 hearing on the appeal of United States

Magistrate Judge Karen B. Molzen's ruling, the Court discussed with counsel the possibility of

defense counsel obtaining a copy of the statement counsel wishes to use by subpoenaing the

author of the statement to the hearing. However, the language of Rule 26.2 does not permit

---

[9] As the Supreme Court noted in the *Jencks* decision:

> Flat contradiction between the witness' testimony and the version of the events given
> in his reports is not the only test of inconsistency. The omission from the reports of
> facts related at the trial, or a contrast in emphasis upon the same facts, even a
> different order of treatment, are also relevant to the cross-examining process of
> testing the credibility of a witness' trial testimony.

*Jencks*, 353 U.S. at 667. A defendant could impeach the credibility of the witness by pointing out
that the witness had omitted certain facts in the report on which the witness's testimony is based.

obtaining the statement of the author by that procedure. Rule 26.2(a) only allows the "party who did not call the witness" to move for production of the witness's statement. Consequently, if counsel for a defendant subpoenas the law enforcement agent who authored the statement, the defendant could not then move for production of the statement.

There does appear to be a cumbersome, convoluted means of having the third-party statement produced at a preliminary hearing without running afoul of the language in the Jencks Act and Rule 26.2. The concluding paragraph of the Advisory Committee Notes to the 1979 Addition to Rule 26.2 states:

> Under subdivision (a) of this rule, the motion for production may be made by "a party who did not call the witness." Thus, it also requires disclosure of statements in the possession of either party when the witness is called neither by the prosecution nor the defense but by the court pursuant to the Federal Rules of Evidence. Present law does not deal with this situation, which consistency requires be treated in an identical manner as the disclosure of statements of witnesses called by a party to the case.

Hence, it appears that a magistrate judge could subpoena to a preliminary hearing the author of a statement on which another testifying law enforcement officer, who did not author the statement, is relying. Once the witness, who is the author of the statement, appears at the preliminary hearing in response to the subpoena issued by the magistrate judge, either the government or a defendant could move for production of the author's statement. This approach clearly is wasteful of the Court's time and resources; it would involve certain expenses; and in many instances it likely would require rescheduling preliminary hearings.

A simple solution would be voluntary production of a statement by the government when the statement does not contain sensitive material. With respect to application of the Jencks Act and Rule 26.2 at a trial, the Advisory Committee Notes point out that "[t]he rule is not intended to discourage the practice of voluntary disclosure at an earlier time so as to avoid delays at trial."

14

That principle could apply equally to preliminary hearings, under FED. R. CRIM. P. Rule 5.1(h)(1) which states: "Rule 26.2(a)–(d) and (f) applies at any hearing under this rule, unless the magistrate judge for good cause rules otherwise in a particular case." If in regard to a particular preliminary hearing a magistrate judge opts to subpoena to the hearing the author of a report on which a testifying non-author will rely, it would seem that voluntary disclosure of the statement by the government to defense counsel would be a prudent choice, saving time and expense.[10]

In cases in which the government has a good faith belief that the statement of a witness subpoenaed to a preliminary hearing by a magistrate judge contains certain privileged or irrelevant information that should not be disclosed, counsel for the government could request an *in camera* review of the statement by the magistrate judge before the magistrate judge orders production of all or part of the statement. This should alleviate the government's concerns about sensitive information being inappropriately provided to counsel for a defendant. A preliminary hearing procedure of this nature appears to be consistent with the language of Rule 26.2(b) and (c), which applies at a trial.

---

[10] There is another alternative that should assure that the witness gives correct testimony based on a statement made by somebody else. That would be for the government voluntarily (or by court order) to provide a copy of the statement only to the magistrate judge who then would be in a position to decide, as the witness testifies, whether the witness's testimony accurately and fully relates the content of the statement. If the magistrate judge believes that the testimony falls short, the magistrate judge could ask questions designed to fill in gaps in the testimony or could make a decision at that point to subpoena the author of the statement to the hearing for cross-examination by defense counsel.

**III.     Conclusion**

The Court concludes that Rule 26.2 does not require the production of a statement or report authored by a non-testifying person simply because a testifying witness, who was not involved in an underlying investigation and who played no role in preparing the statement or report, relies on the statement or report in providing testimony.

IT IS THEREFORE ORDERED that Judge Molzen's ruling that the United States must produce the statements of Agents Madden and Duffy following the direct testimony of Agent Mendoza is REVERSED.

_____
SENIOR UNITED STATES DISTRICT JUDGE